UNITED STATES of America, Appellee,

v.

Gennaro LANGELLA,
Defendant-Appellant.

No. 17, Docket 85–1103.

United States Court of Appeals,
Second Circuit.

Argued Aug. 27, 1985.

Decided Nov. 1, 1985.

Stanley M. Meyer, DePetris, Meyer & Diesenhouse, New York City, for defendant-appellant.

Douglas Eric Grover, Sp. Atty. for the U.S. Dept. of Justice, Organized Crime Strike Force, E.D. of N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty. for the E.D. of N.Y., Edward A. McDonald, Atty.-in-Charge, U.S. Dept. of Justice, Organized Crime Strike Force, E.D. of N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before FEINBERG, Chief Judge, KEARSE and CARDAMONE, Circuit Judges.

FEINBERG, Chief Judge:

Gennaro Langella appeals from his conviction of obstruction of justice, 18 U.S.C. § 1503, and of making false declarations before a grand jury, 18 U.S.C. § 1623, after a jury trial in the United States District Court for the Eastern District of New York before Judge Henry Bramwell. Langella received a sentence of two consecutive five-year prison terms and a fine of $15,000. He argues to us, among other things, that certain inflammatory material should have been stricken from the indictment and that the imposition of consecutive sentences on the facts of this case constitutes multiple punishment for the same offense in violation of the rule of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). We conclude that appellant was not punished twice for the same offense and that the failure to strike portions of the indictment was not reversible error. The judgment of conviction is affirmed.

## I.

According to the indictment in this case, in the summer of 1981, a grand jury in the Eastern District was investigating alleged racketeering and other criminal activities of the Colombo organized crime family. In particular, the grand jury was seeking to determine whether there was a meeting between the Colombo and DeCavalcante organized crime groups on May 6, 1981 at the Brooklyn home of Vincent Regina and, if so, who had attended it. Agents of the Federal Bureau of Investigation and the United States Marshal's Service had interrupted a meeting at Regina's house on that day, and had discovered appellant Langella on the premises.

Langella was called before the grand jury three times to answer questions concerning the meeting, the Colombo family

and his relationship to various individuals suspected of being members of organized crime groups. He appeared before the grand jury twice in July and once in August, 1981. On July 8, the date of his first appearance, he denied knowing that anyone he knew was a member of the Colombo family and claimed not to know how he had met two individuals who had been present at the May 6 gathering. Langella also stated that he had been without work for twelve years due to health problems, and that he did not know what Carmine Persico, his friend of thirty years, did for a living. On July 17, Langella stated to the grand jury that the purpose of the meeting had been to revive the Italian-American Civil Rights League, and that no business of substance had been transacted during the thirty minutes that the meeting had been in progress prior to its interruption. He also stated that although Carmine Persico had been present in the house where the meeting took place, Persico had remained upstairs and had never attended the meeting, which was held in the basement. On August 7, Langella reaffirmed that Persico had been upstairs and had not participated in the May 6 meeting in any way.

In September 1984, Langella was indicted in a two-count indictment charging him with making false statements to the grand jury during his 1981 appearances and with obstruction of justice. The introductory paragraphs of both counts, which we will refer to for convenience as the perjury count and the obstruction of justice count, described the subjects of the grand jury investigation as the loansharking, extortion, murder and narcotics distribution activities of the Colombo organized crime family. As part of the investigation, the indictment continued, the grand jury sought to determine who had been present at the May 6, 1981 meeting held at Regina's house and what had occurred there. Each count went on to state that the grand jury had heard evidence that the purpose of the meeting had been for the Colombo and DeCavalcante crime groups to discuss the possibility of an alliance and to divide territories for the distribution of narcotics.

The first count of the indictment then recited excerpts from Langella's grand jury testimony of July 17 and August 7, 1981, where he repeatedly stated that Persico had not attended the meeting. That count charged Langella with violating 18 U.S.C. § 1623 by lying to the grand jury on these occasions. The second count of the indictment repeated the background information contained in the first count, and accused Langella of obstructing justice under 18 U.S.C. § 1503 by testifying falsely and concealing evidence from the grand jury in all three of his appearances before it.

At the outset of trial, Langella conceded that his statements to the grand jury quoted in the perjury count had been material to the grand jury's investigation. He then moved to strike the paragraphs of the indictment that contained background information ("the background paragraphs"), claiming they were inflammatory and irrelevant to the charges. Judge Bramwell denied the motion. At trial, the government offered to produce a witness willing to testify as to the information in the background paragraphs. Langella argued that this evidence should not be admitted, but Judge Bramwell ruled that the evidence could go to the jury. The government and Langella then stipulated that if the witness appeared, he would testify as to the matters described in the disputed paragraphs.

At trial, the government relied primarily on the transcripts of Langella's three grand jury appearances in 1981 and the testimony of the federal agents who had interrupted the Brooklyn gathering. The agents' testimony provided circumstantial evidence, directly contradicting appellant's answers to the grand jury, which indicated that Carmine Persico had been in the basement of Regina's house at the time the agents emerged to stop the meeting. After deliberation, the jury found Langella guilty on both counts. Judge Bramwell then sentenced him to consecutive terms of five years in prison on the perjury count

and five years on the obstruction of justice count, and fined him $10,000 on the former count and $5,000 on the latter.

## II.

Appellant contends that the background paragraphs should have been stricken from the indictment as irrelevant and prejudicial. To establish that Langella violated 18 U.S.C. § 1623, he argues, the government had only to show deliberate falsehoods concerning matters material to the grand jury's investigation. Because Langella conceded that his statements to the grand jury had been material, the only element missing in the prosecution's perjury case was proof that Langella had lied. Accordingly, he claims, the description of the subjects of the grand jury inquiry and mention of evidence that the Brooklyn meeting had been a conference of organized crime clans were irrelevant to the crime charged. Since these matters were also highly prejudicial in the eyes of the jury, he urges, the trial judge seriously erred in refusing to strike the background paragraphs from the perjury count. For similar reasons, he argues that the disputed paragraphs should also have been stricken from the obstruction of justice count.

The government responds that the background paragraphs were necessary on the perjury count to show that Langella had the specific intention to lie before the grand jury. With regard to the obstruction of justice count, the government adds, the disputed paragraphs were also needed to inform the jury of the scope and nature of the grand jury's investigation.

■ We agree with the government that the background paragraphs were relevant to the obstruction of justice count, and that refusal to strike them was therefore proper. We need not decide, however, whether the background paragraphs were also relevant to the offense of perjury once Langella had conceded materiality. Even assuming that this material was both prejudicial to appellant and no longer necessary to show materiality on the perjury charge, any prejudice to Langella could have been remedied by an instruction to the jury to disregard the material in considering the perjury issue. There is no indication in the record that Langella requested such a limiting instruction. Instead, Langella took the position that the background paragraphs should be stricken completely. Accordingly, the trial judge did not commit reversible error in denying appellant's motion to strike.

■ Appellant also claims that he should never have been charged with obstruction of justice. He reasons that all the government proved here was that Langella made false statements to the grand jury, and proof of such false testimony alone will not support a conviction for obstruction of justice under 18 U.S.C. § 1503. We find no merit to this claim. The obstruction count of the indictment did not charge Langella only with making false statements. It also accused him of concealing evidence concerning Carmine Persico and the Brooklyn meeting. Several of Langella's answers on these topics were obviously evasive and constituted concealment of evidence. That the false testimony concerning Persico's presence was also a lie did not remove it from the scope of Section 1503. See *United States v. Cohn*, 452 F.2d 881, 883–84 (2d Cir.1971), cert. denied, 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972).

## III.

■ The trial judge imposed consecutive sentences on the perjury and obstruction of justice counts. Langella argues that his conviction for obstruction of justice was based upon the same grand jury testimony as his perjury conviction, and that therefore he received punishment twice for one offense in violation of the rule of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Blockburger* rule is a principle of statutory construction used to determine whether Congress has provided that two statutory offenses may be punished separately. *Whalen v. United States*, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 65 L.Ed.2d 715 (1980), cited in *Albernaz v. United States*, 450

U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981). The rule provides that

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger*, supra, 284 U.S. at 304, 52 S.Ct. at 182. Consecutive punishments should not be imposed for violations of separate statutes when only one "offense" has been committed under *Blockburger*, absent a clearly expressed legislative intent to the contrary.

The conduct made criminal by 18 U.S.C. § 1623 is the making of a false material statement before a grand jury. Langella asserts that on the count charging violation of 18 U.S.C. § 1503 the government had to prove that he had made false material statements before a grand jury and that his declarations had obstructed justice. Accordingly, he claims, the government had to prove every element of its perjury case in order to prove obstruction of justice, and therefore, perjury and obstruction under these circumstances collapse into a single "offense" under *Blockburger*.

The government denies that appellant's two convictions stem from the same conduct. Rather, it argues, the conviction under 18 U.S.C. § 1623 was based only on statements Langella made before the grand jury on July 17 and August 7, 1981, to the effect that Persico had not attended the meeting. On the other hand, appellant's responses on July 8, and in his two later appearances, dealing with the meeting as well as with Persico's whereabouts, provided the basis for the obstruction charge under 18 U.S.C. § 1503. Hence, each conviction involves a distinct set of "act[s] or transaction[s]" and the *Blockburger* rule does not apply.

We need not address the issues thus framed, because Langella's argument based on *Blockburger* would fail even if both convictions were founded on identical conduct. In *Albernaz*, the Supreme Court noted that

> application of the [*Blockburger*] test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof required to establish the crimes.

*Albernaz*, supra, 450 U.S. at 338, 101 S.Ct. at 1141-42, quoting *Ianelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975). *Albernaz* requires us to focus on the provisions of the statutes involved, rather than on the evidence adduced at trial, to determine whether the punishment appellant received was proper under *Blockburger*. See, e.g., *United States v. Barton*, 647 F.2d 224, 235-38 (2d Cir.), cert. denied, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981).

Comparison of the statutory provisions at issue here establishes that perjury and obstruction of justice are distinct offenses under the *Blockburger* analysis. The definitions of perjury and of obstruction of justice each require proof of elements that the other does not. To show perjury, the government must demonstrate the falsity and materiality of a witness' statements. 18 U.S.C. § 1623. Neither element is needed to prove obstruction of justice under 18 U.S.C. § 1503. Under that section, the government need only establish that a witness has deliberately attempted to frustrate a grand jury's investigation, see *United States v. Alo*, 439 F.2d 751, 754 & n. 4 (2d Cir.), cert. denied, 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971), not that the statements made were false or material. Conversely, to convict under section 1623, the government need not prove that a defendant has obstructed the administration of justice. As each offense requires proof of an element that the other does not, imposition of consecutive sentences for perjury and for obstruction of justice does not run afoul of the principle stated in *Blockburger*. See *United States v. Bridges*, 717 F.2d 1444, 1448-51 (D.C.Cir.1983), cert. de-

nied, 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 708 (1984).

## IV.

Appellant also contends that the indictment should have been dismissed because of pre-indictment delay, and that the trial judge should have recused himself because of bias. Neither argument has merit. To prevail on his claim that pre-indictment delay violated his due process rights, Langella must prove both that the delay resulted in actual prejudice and that the government's reasons for the delay were improper. *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). No such showing was made. To the contrary, the record indicates that the delay was due to the government's need to preserve evidence and maintain secrecy in a related investigation in the Southern District of New York. Nor was Judge Bramwell required to recuse himself. Information possessed by a judge must stem from an extrajudicial source to warrant disqualification. *United States v. Coven*, 662 F.2d 162, 168 (2d Cir.1981), cert. denied, 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982). Appellant objects to Judge Bramwell's consideration of a newspaper article describing Langella as part of the Colombo organized crime family during a proceeding to set bail. However, during that proceeding the prosecutor justifiably told the judge about a pending indictment in the Southern District and what it indicated about Langella. Thus, the judge's knowledge of Langella's position in the underworld did not come from an extrajudicial source.

The judgment of conviction is affirmed.